# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

ANDRIY KUVSHYNOV, as surviving parent and personal representative of OLEKSANDRA KUVSHYNOVA, deceased, and individually, IRYNA MAMAYSUR, as surviving parent of OLEKSANDRA KUVSHYNOVA, deceased, and individually, and SHANE THOMSON, individually,

Index No.:

**SUMMONS**

**JURY TRIAL DEMANDED**

Plaintiff designates
NEW YORK COUNTY
as the place of trial

                      Plaintiffs,

-against-

FOX NEWS NETWORK, LLC, FOX CORPORATION, NEWS CORPORATION a/k/a NEWS CORP., RUPERT MURDOCH, SUZANNE SCOTT, BENJAMIN HALL, and HARPERCOLLINS PUBLISHERS L.L.C.,

The Basis of the Venue is Defendant's Principal Place of Business

                      Defendants.

-------------------------------------------------------------------X

**TO THE ABOVE-NAMED DEFENDANTS:**

    **YOU ARE HEREBY SUMMONED** to answer the Complaint in this Action and to serve a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance on the Plaintiff's attorneys within twenty (20) days after this service of this Summons, exclusive of the day of service (or within thirty (30) days after the service is completed if this Summons is not personally delivered to you within the State of New York); and in the case of your failure to Appear or Answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: New York, New York
      March 14, 2024

STEPHEN F. HUMPHREYS PC
Stephen Humphreys
4200 Northside Parkway NW, #1-100
Atlanta, GA 30327
(706) 207 6982
(Pro Hac Vice anticipated)

BELLUCK & FOX, LLP

546 5th Avenue, 5th Floor
New York, New York 10036
Tel: (212) 681-1575

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

DEFENDANTS' ADDRESSES:

FOX NEWS NETWORK, LLC
28 LIBERTY STREET
NEW YORK, NY 10005

FOX NEWS NETWORK, LLC
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036

FOX CORPORATION
C/O C T CORPORATION SYSTEM
28 LIBERTY STREET
NEW YORK, NY, 10005

FOX CORPORATION
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036

NEWS CORPORATION a/k/a NEWS CORP
C/O NEWS CORPORATE SERVICES INC.
28 LIBERTY STREET
NEW YORK, NY10005

NEWS CORPORATION a/k/a NEWS CORP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036

RUPERT MURDOCH
C/O FOX NEWS NETWORK, LLC
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036

SUZANNE SCOTT
C/O FOX NEWS NETWORK, LLC
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036

BENJAMIN HALL
C/O FOX NEWS NETWORK, LLC
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036

HARPERCOLLINS PUBLISHERS LLC
28 LIBERTY STREET
NEW YORK, NY 10005

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

ANDRIY KUVSHYNOV, as surviving parent and personal representative of OLEKSANDRA KUVSHYNOVA, deceased, and individually, IRYNA MAMAYSUR, as surviving parent of OLEKSANDRA KUVSHYNOVA, deceased, and individually, and SHANE THOMSON, individually,

Index No.:

**VERIFIED COMPLAINT**

Plaintiffs,

-against-

FOX NEWS NETWORK, LLC, FOX CORPORATION, NEWS CORPORATION a/k/a NEWS CORP., RUPERT MURDOCH, SUZANNE SCOTT and BENJAMIN HALL, and HARPERCOLLINS PUBLISHERS L.L.C.,

Defendants.

-------------------------------------------------------------------X

Plaintiffs, by their attorneys, BELLUCK & FOX, LLP   and STEPHEN F. HUMPHREYS PC **,** complaining of the defendants, respectfully states and alleges, upon information and belief, as follows:

1.      Plaintiffs Andriy Kuvshynov and Irina Mamaysur, parents of Oleksandra "Sasha" Kuvshynova, and Shane Thomson, file this Complaint for wrongful death, fraud, intentional infliction of emotional distress, defamation, and tortious interference against Fox News and related Murdoch entities. The action arises from the fatal incident on March 14, 2022 near Irpin, Ukraine, in which Fox News Network, by its recklessness and negligence, caused the death of Sasha Kuvshynova and then engaged in a campaign of material misrepresentations and omissions to hide its own accountability for the disaster and shift blame to Shane Thomson.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

### Parties and Related Persons

2.     Oleksandra "Sasha" Kuvshynova, deceased, (hereafter "Sasha") was a 24-year-old Ukrainian woman employed as an independent contractor by Fox News Network from January to March of 2022, at the beginning of the Russian invasion of Ukraine. Her death was caused by then alleged wrongful acts of Defendants on and around March 14, 2022, near the city limits of Irpin and Hostomel, Ukraine.

3.     Plaintiff, Andry Kuvshynov, as parent, survivor, and personal representative of his daughter, Oleksandra "Sasha" Kuvshynova, deceased, stands in the place of Sasha for her loss of life and pain and suffering. The father has his own claims for moral damage, pain and suffering, and fraud under Ukrainian law.

4.     Plaintiff, Irina Mamaysur, as parent and survivor of her daughter, Oleksandra "Sasha" Kuvshynova, deceased stands in the place of Sasha for her loss of life and pain and suffering. The mother has her own claims for moral damage, pain and suffering, and fraud under Ukrainian law. Collectively, the parents of Sasha Kuvshynova are herein referred to as "the Kuvshynovs" and "Sasha's parents."

5.     Defendant Fox New Network LLC is a Delaware Corporation, owned by the Murdoch family, with its principal place of business in New York. It is at home in New York City and general jurisdiction is conferred over it.

6.     Defendant Fox Corporation is a Delaware corporation, owned by the Murdoch family, with its principal place of business in New York. Fox News Network LLC is a subsidiary.

7.     Defendant Rupert Murdoch is a principal and former CEO of the Fox

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

entities. Rupert Murdoch was Chairman and CEO directing the Fox entities at the time of the delicts alleged in this lawsuit in and around March of 2022.

8.     Collectively, the Defendant Fox entities and related companies owed by the Murdoch family are referred to as "Fox."

9.     Lachlan Murdoch is the current Chairman and CEO of Fox.

10.     Defendant Suzanne Scott is Fox News Network CEO who, upon information and belief, personally supervised the scheme to defraud the Kuvshynovs from New York.

11.     Nicolle Campa was the Fox employee and agent who effected the scheme to defraud the Kuvshynovs, acting as an agent and employee of Defendant Fox.

12.     On information and belief, other unknown Fox employees devised and implemented the scheme to conceal Fox's wrongdoing, defraud the Kuvshynovs, and shift blame to Plaintiff Thomson.

13.     News Corporation is a Delaware Corporation owned by the Murdoch family, which owned Fox News until a split in 2013 in which the media companies owned by the Murdoch family were placed under Fox Corp and the publishing arms remained under a new company also named News Corporation.

14.     Defendant HarperCollins Publishers LLC, a Delaware corporation with its principal place of business in New York, is a subsidiary of News Corporation, a Murdoch-owned company. HarperCollins published *Saved*, which gives a false account of the circumstances of the death of Sasha Kuvshynova as part of the scheme to deceive the Sasha's parents and the public concerning Fox's alleged wrongdoing that caused Sasha's

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

death.

15.     Unknown persons acting as employees and agents of Defendants Fox and HarperCollins produced a misleading account of Sasha's death to conceal Fox's responsibility for the alleged wrongdoing and to deceive Sasha's parents and the public.

16.     SEPAR International (hereafter "SEPAR") is a company with which Fox contracted hastily to provide security advisors in Ukraine during the war.

17.     Stephen Smith is the CEO of SEPAR.

18.     Trey Yingst was a correspondent on the Fox crew in Ukraine.

19.     Duncan Gordon was a SEPAR security contractor, assigned to accompany the Fox News crew, including the decedent Sasha Kuvshynova, on March 14, 2022, before he was left behind.

20.     Pierre Zakrzewski, the cameraman for the Fox News crew, was killed in Hostomel on March 14, 2022 while acting as an agent and employee of Fox. Upon information and belief, Zakrzewski's widow Michelle Ross-Stanton entered a wrongful death settlement agreement with Fox--in addition to the insurance coverage and funeral expenses for employees killed on duty.

21.     Defendant Benjamin Hall ("Ben Hall") was the lead Fox reporter on the news crew that included Sasha Kuvshynova, who was killed in Hostomel, Ukraine on March 14, 2022.

22.     Hall, though grievously injured, survived. Hall continues as a correspondent, agent, and employee of Fox.

23.     Hall wrote or adopted a false account of the death of Sasha Kuvshynova

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

published by Defendant Harper Collins and heavily promoted by Defendant Fox for the purpose of deceiving Sasha's parents and the public about Fox's wrongful conduct and accountability for Sasha's death. Though named as a party-defendant, Hall may, on information and belief, be more properly aligned in this litigation as a party-plaintiff victim of Fox Defendants' wrongful conduct.

### Jurisdiction and Venue

24.    This court has jurisdiction over this action pursuant to N.Y. Est. Powers & Trusts Law § 5-4.1

25.    Venue is proper as party-defendants are located in this County.

26.    Fox News Network, LLC is a Delaware Corporation headquartered at 1211 Avenue of the Americas, New York, NY.

27.    This court has jurisdiction over Defendants in New York who committed acts and omissions both in New York and Ukraine that caused the wrongful death of Sasha Kuvshynova and by wrongful artifice deprived Sasha's parents of their rights, as an extension of wrongfully depriving Sasha Kuvshynova of her rights under Ukrainian law during her lifetime.

28.    Acts of fraud to conceal the alleged wrongdoing that caused the death of Sasha Kuvshynova in Ukraine were devised and committed in the United States.

### FACTS

29.    In January of 2022, a Fox crew assembled and set up headquarters at the Intercontinental Hotel in Kyiv, Ukraine to cover a looming invasion by Russia.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 1

INDEX NO. UNASSIGNED

RECEIVED NYSCEF: 03/14/2024

Case 1:24-cv-01950    Document 1-1    Filed 03/15/24    Page 9 of 30

30.  The Fox employees consisted of lead reporter Ben Hall, reporters Trey Yingst, second cameraman David "Dudi" Gamliel, and cameraman Pierre Zakrzewski.

31.  The team also included two security advisors and consultants that Fox hastily contracted through SEPAR, a security agency based in the United Kingdom. Duncan "Jock" Gordon and Shane Thomson were former British soldiers whose job was to evaluate and ensure the safety of the crew and keep them out of unreasonably hazardous situations and avoid risks that were extraordinary and unwarranted even for wartime conditions. They were also trained to administer emergency medical care in the field.

32.  The Fox crew also engaged Ukrainian nationals for assistance. These included a driver and an interpreter named Vlad.

33.  Oleksandra "Sasha" Kuvshynova, a 24-year-old Ukrainian woman, was also engaged, as an independent contractor, as a guide and translator.

34.  Kuvshynova has variously been described by Fox and other media sources as a consultant, fixer, producer, and independent contractor. By all accounts, she excelled in her work and dedication, and the Fox team in Kyiv relied on her heavily in a leadership vacuum.

35.  At least in the case of Kuvshynova, the Ukrainian assistants were not hired legally according to Ukraine law, or to any known legal regime. There is no evidence that Kuvshynova was ever paid during the two months she worked for Fox.

36.  Kuvshynova had no written contract of employment, insurance, health care or worker's compensation coverage or equivalent benefits.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

37.     Sasha's parents were concerned during the period she worked for Fox that she was so anxious to win Fox's approval and future job prospects that Fox was taking advantage of her.

38.     Moreover, upon information and belief, Fox never registered as a company doing business in Ukraine or paid any taxes based on its workers' pay as required by Ukrainian law.

39.     During the two months Sasha worked with Fox, she virtually lived at the Fox operation in the Intercontinental Hotel and rarely returned to her home where she lived with her parents.

40.     Originally, the Fox team also included two producers on the ground in Kyiv, Yonat Frilling and Jennifer Gardner, whose role was to evaluate potential stories, including the risk-reward ratio, and make assignments.

41.     However, after the Russian invasion of February 24, 2022, as Russian forces approached as far as the outskirts of Kyiv, Fox management made a decision to pull the producers out of Kyiv because the city was considered too dangerous.

42.     On the outskirts of Kyiv, Hostomel, where Russian airborne troops attempted to seize a Ukrainian military airfield since the first day of the invasion, was the scene of fierce battles.

43.     Irpin, a Kyiv suburb adjacent to Hostomel, was by March 13, 2022, half occupied by Russian forces.

44.     The city centers of Kyiv and Irpin are separated by twenty-four (24) kilometers, approximately 16 miles. Hostomel and Irpin share a boundary with Kyiv at

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

the city limits, so the Russian forces were much closer to Kyiv than that.

45.    Fox left the news crew in place, but minus a layer of evaluation, monitoring, and vetting of story assignments that producers on the ground normally provide.

46.    With no producer in place on the ground, the Fox crew in Kyiv was reporting to Fox news desks in London, Israel, Washington, and New York.

47.    The Fox crew consisted of two teams that alternated going out every other day in search of footage, with one security contractor attached to each team.

48.    Given the volume and urgency of information coming out of the Russian invasion, the Fox crew was understaffed compared to other major news networks, and the Fox crew was overworked, sleep-deprived, and exhausted.

49.    On March 13, 2022 with Russian forces occupying parts of Hostomel and Irpin, Ukrainian forces launched a counterattack in the area.

50.    A proposal for the Fox crew to visit that same area in search of footage that day was vetoed by security contractor Shane Thomson.  Instead, some of the Fox crew went to the streets of Kyiv in search of a story and ended up getting detained at gunpoint and told not to film Ukrainian forces.

51.    An American journalist, Brent Renaud, was killed by Russian fire on the same day, March 13, 2022 in Irpin.

52.    That same afternoon, March 13, 2022 the Mayor of Irpin issued a ban barring all foreign journalists from the area.

53.    This prohibition by the Mayor was repeated the same afternoon on the text chat group maintained by the Fox crew, which also noted the killing of Brent Renaud.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

54.     The area, at the time, was dubbed "the most dangerous place in Ukraine."

55.     Inexplicably, one of the Fox teams set out for the Irpin-Hostomel area on March 14, 2022 the day after Brent Renaud was killed there and the Mayor of Irpin issued a proclamation banning all journalists, and the day after security advisor Shane Thomson had vetoed the idea.

56.     Shane vetoed the idea to go into Irpin on March 13, 2022 on the night of the March 12, 2022 due to information from a former military colleague fighting with Ukrainian forces in Bucha and Irpin, as the source said do not to go into or near Irpin for the next few days as Russian forces were scattered inside Irpin and Ukrainian forces were actively targeting anyone that wasn't a refugee escaping the conflict area. Information passed along was that Russian forces were posing as media crews.

57.     Security advisors are tasked to take any source of information as credible until proven otherwise. This was a highly credible source of information.

58.     On the morning of March 14, 2022 the Ukrainian driver who had been working for the Fox crew refused to go to the Irpin-Hostomel area. So the team consisting of Ben Hall, Pierre Zakrzewski, and Sasha Kuvshynova had to find a different driver.

59.     The planned assignment was to go near the front northwest of Kyiv — in the area of Irpin and Hostomel — to film Ukrainian defenses.

60.     This also was not a sound plan, as Ukrainian military authorities also prohibited foreign media from filming and broadcasting their defenses, for obvious reasons.  In fact, when the Fox crew attempted to film Ukrainian defenses that day, they were turned away by Ukrainian military personnel at gunpoint.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

61.     The evidence of all communications regarding the extreme danger of the situation, the security advisor rejection of the assignment, the death of Renaud, the refusal of the driver to go on the assignment, and the prohibitions by Ukrainian authorities regarding the Fox assignment for March 14, 2022 in the Irpin-Hostomel area are, upon information and belief, in the possession of Fox.

62.     The team met with two Azov soldiers who were freelancing as media guides. They had previously taken the New York Times on a tour of the area — but that was before the killing of Brent Renaud and the ban issued by the Mayor of Irpin.

63.     Unlike the Fox team on March 14, 2022 the New York Times crew took their security consultant with them.

64.     When the Fox crew met the Azov soldiers on March 14, 2022, the car driven by the Azov soldiers was not large enough to carry all the Fox team members.

65.     A decision was made by defendants for Ben Hall, Pierre Zakrzewski, and Sasha Kuvshynova to go with the Azov soldiers, leaving their security consultant Gordon behind. Gordon had a vehicle but did not follow the team, instead waiting for them at the Azov rendezvous point.

66.     Pierre Zakrzewski carried, in addition to his cell phone and camera, a satellite phone that allowed him to stay in contact with Fox management outside Ukraine. Upon information and belief, Fox is in possession of all the cameras and communications equipment that would reveal communication and approval of these actions which soon proved fatal.

67.     Fox has refused all requests to turn over this gear and share the

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

communications at issue.

68.     On March 14, 2022 the team in the field was not in communication with the rest of the Fox crew in Kyiv. In addition, Fox had no geolocation tracking devices for its crew. The team in Kyiv did not know the whereabouts of the team led by Ben Hall at any point, and they were not aware that security contractor Duncan Gordon had been left behind.

69.     The absence of the security contractor was vital, as the crew made fatal mistakes, such as stopping at an abandoned Ukrainian checkpoint, which both sides would have pre-programmed in their artillery coordinates.

70.     The Fox team in Kyiv first became aware of a problem during a phone call between Trey Yingst and Duncan Gordon around 1 p.m., by which time the team in the field was supposed to have reported back and returned to Kyiv. In that conversation, between Trey Yingst in Kyiv and Duncan Gordon in the field where he had been left behind, they ascertained that neither one of them knew the status or whereabouts of the team led by Ben Hall.

71.     On March 14, 2022, the team led by Ben Hall took some footage in the destroyed village of Horenka, east of Irpin. This footage is in the possession of Fox. In portions of the footage from March 14, 2022 aired by Fox, constant artillery fire can clearly be heard.

72.     The team left Horenka and joined the main road back to Kyiv, through Hostomel, within a quarter mile of the Irpin city limits. On the main road, the crew stopped at the abandoned checkpoint.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

73.     While the car carrying the crew was stopped, first one and then two explosive rounds hit near it. As some of the crew scurried out of the car to escape the clear and present danger, a third round hit the car, with Sasha inside.

74.     The car caught fire and Sasha was burned to ashes inside it, causing her death.

75.     Cameraman Pierre Zakrzewski managed to escape the car but bled to death at the side of the road from a small puncture wound in his leg. The bleeding could easily have been stemmed to save his life if the security contractor trained in battlefield first aid had been present. Upon information and belief, all security contractors are trained to a minimum of FREQ 3 (First Response Emergency Care)

76.     Ben Hall was later found grievously injured at the side of the road by Ukrainian soldiers, and was evacuated and saved.

77.     Fox has maintained that it knew where its crew was. However, that is false. When Ben Halls' team did not show up back in Kyiv that afternoon and had not been in contact with either Jock, the security advisor left behind, or the rest of the Fox crew back at the Intercontinental Hotel in Kyiv, a major search for the missing crew was launched by Shane and other news organizations at the Intercontinental. This search involved the entire Fox team in Kyiv and other news organizations, eventually directed by Fox management at the highest level in New York after it was initiated by Shane and other news organizations.

78.     Ben was found in the hospital in Kyiv on the evening of the 14th and the deceased were located by Shane the next day March 15, 2022 in the main city morgue.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

79.     After the dead and injured crew members were located in morgues and hospitals, Fox took over all electronic gear—phones, cameras, and tracking devices--that survived the attack and has it in its possession.

80.     Upon information and belief, Fox has never explained the failures of communication and geo-location.

81.     Upon information and belief, Fox has never explained the failure of coordination, or how the crew ended up on assignments prohibited by Ukrainian authorities.

82.     Upon information and belief, Fox has never explained the failure to regard the security assessment of Shane Thomson on March 13, 2022 that it was too dangerous to go to the Irpin-Hostomel area

83.     Upon information and belief, Fox has withheld any record of any evaluation or re-evaluation of the crew's assignment in light of the killing of Brent Renaud or the ban on journalists in the area issued by the Mayor of Irpin the day before Sasha was killed.

84.     The book authored by Ben Hall and published by Fox's sister Murdoch corporation HarperCollins on the anniversary, March 14, 2023, includes a misleading account that Russian forces were "understood" to be 30 miles away. In reality, upon information and belief, the crew on their return from Horenka, through Hostomel, were within a mile of Russian forces when they were killed, less than a quarter mile from the Irpin city limits.

85.     The book is misleading in other ways, such as reciting the crew's travel to

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Horenka while omitting the location of the fatal attack in Hostomel and the proximity to Irpin. Upon information and belief, this is because of the known ban on journalists by the Mayor of Irpin and the notoriety of Hostomel as a scene of fierce fighting.

86.     After the fatal reckoning, journalists from another network located Ben Hall in a Kyiv hospital and he was transported out of the country for medical treatment including multiple, major surgeries.

87.     Though it was not part of his contracted responsibilities, Fox tasked Shane with transporting Pierre's body across the Polish border to deliver it to his widow, Michelle Ross-Stanton. Shane objected to driving a hearse to Lviv and then to the Polish border but was told by Fox that he had to.

88.     Shane was temporarily re-assigned, then let go from his employment without explanation.

89.     He was severely traumatized by the combined experience of his colleagues being killed, transporting the dead body of his friend, and then being dismissed.

90.     Shane reached out to Fox repeatedly for assistance with the trauma. Fox never responded, even after Shane attempted suicide by hanging.

91.     Shane's experience has been similar to others in the aftermath of the deaths of Sasha and Pierre Zakrzewski. Fox has attempted to impose non-disclosure and non-disparagement agreements on all the surviving family members. Fox and Ben Hall have declined to cooperate by providing information to a war crimes inquiry into the fatal incident conducted by French and Irish authorities (Pierre Zakrzewski was a dual French-Irish citizen) in the European Court of Human Rights in Strasbourg.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)     INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1     Case 1:24-cv-01950     Document 1-1     Filed 03/15/24     Page 18 of 30     RECEIVED NYSCEF: 03/14/2024

92.     Shane was able to continue work temporarily when he was hired by a Sky News manager who knew him from Kyiv. After that contact left Sky News, however, Shane has been unable to find employment in his field. In employment solicitations, he is frequently associated with the Fox News disaster of being security advisor for the crew that was killed in Irpin the day after journalists were banned from the area.

93.     In December 2023, before Shane lost his position at Sky News, he was told by Fox employees that it was a shame the way Fox scapegoated him. Upon information and belief, Fox employees spread a false story that Shane had a drinking problem in Kyiv at the time of the fatal incident, insinuating that this was the cause of the disastrous assignment in which Pierre and Sasha were killed.

94.     On March 14, 2022, when Sasha's parents did not hear from her and she did not return messages, they grew frantic as reports circulated of a news crew being fired on in Irpin.

95.     The only thing they heard from Fox was a call from Vlad at the Intercontinental advising them they needed to come pick up Sasha's suitcase with her belongings.

96.     Fearing what that meant for their daughter, they did not go. Sasha's father went with a friend to collect the suitcase the next day and put it in her room where they left it unopened for over a year.

97.     In the following days, Sasha's remains were located in a morgue in Kyiv. All that remained were ashes and she was only identified by articles of her clothing.

98.     The Kuvshynovs, in shock, could not believe that the ashes were their

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

daughter's, and had DNA tests performed, holding out hope that their daughter was still missing until the test results came back two weeks later.

99.     Shortly after the fatal incident, Fox released an announcement of the death of Pierre Zakrzewski and the injuries to Ben Hall.

100.    Approximately a day later, Fox released a statement on the death of Sasha, in which CEO Suzanne Scott promised to honor the memory of Sasha, who died trying to tell the world the truth about what was happening in Ukraine.

101.    On the contrary, Fox News since led the way in sounding anti-Ukraine themes. Fox pundits have even sided with Russia.

102.    Meanwhile, ten days after her death on March 14, 2022 Andriy Kuvhsynov, Sasha's father, received two email messages from Fox, one with a condolence letter attached from Fox News CEO Suzanne Scott. The other contained a message from Fox Human Resources saying Fox wished to pay Sasha's back salary for the two months she worked, as well as the funeral expenses and life insurance coverage it carried on its employees.

103.    To receive these amounts owing to Sasha as if she had been legally employed, Fox requested Mr. Kuvshynov to sign papers to release the funds. These included a waiver of all claims against Fox and a non-disparagement agreement.

104.    Fox did not have any communications with Sasha's mother, who was overcome with grief at the time. She never signed any agreements or even saw them until the war crimes inquiry in France commenced several months later.

105.    At the time Mr. Kuvshynov was presented with papers to sign in order to

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

receive Sasha's compensation package, Fox did not reveal any information to Mr. Kuvhsynov concerning the circumstances of Sasha's death, which Fox continues to withhold to this day.

106.     The Kuvshynovs did not have any legal representation at the time, and did not know of a reason they needed any.

107.     The actual circumstances of Sasha's death—which contradict the official accounts given by Fox, Ben Hall, and Harper Collins--were only uncovered though investigation by their counsel almost two years later. New information, and new contradictions, are still being uncovered to this day.

108.     Sasha Kuvshynova's final text message--responding to her parents, who were highly alarmed by the dangerousness of the situation unfolding on March 14, with Russian forces closing in on Kyiv—was not to worry because Fox was a professional news organization that knew what it was doing and would not expose her to unnecessary danger.

## AND AS FOR THE FIRST CAUSE OF ACTION

109.     Fox had a duty to take reasonable care for the safety of those units employed under the circumstances, and Sasha relied on Fox to exercise some modicum of prudence even in an inherently dangerous wartime situation. Even considering the danger in a war zone, Fox's conduct was not reasonable for an entity purporting to be a major news organization.

110.     Fox's actions in taking Sasha to an area from which journalists were banned, to undertake an assignment prohibited by Ukrainian authorities, in the place a journalist

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1    Case 1:24-cv-01950   Document 1-1   Filed 03/15/24   Page 21 of 30    RECEIVED NYSCEF: 03/14/2024

had been killed by hostile fire the day before, where the team driver refused to go, against the advice of security consultant Shane Thomson, after leaving the other security consultant behind and then proceeding to stop at a checkpoint that trained military veterans and security consultants would know to be pre-programmed into artillery firing systems, fails the test of reasonableness in circumstances in which the crew was placed between Russian and Ukrainian lines, in the midst of active bombardment, with hostile Russian forces who had just killed one journalist in line of battle less than a mile away.

111.  If Fox higher management knew about Shane Thomson's veto and the killing of Brent Renaud in Irpin on March 13, the refusal of the driver to go to the battlefield northwest of Kyiv, the Mayor of Irpin's ban on journalists, the plan to film Kyiv defenses that was also expressly prohibited by Ukrainian authorities, and the decision to leave the security and medical detail behind, Fox violated any reasonable standard of care in allowing the team to proceed under these conditions.

112.  Fox also breached its duty and standard of reasonable care if, in these dangerous wartime conditions, it did not engage in sufficient communication, monitoring and oversight to know that its crew was running such excessive hazards and risks.

113.  Sasha Kuvshynova should have been able to rely on either the veteran Fox employees on the team, evaluation by Fox producers on the ground, or risk assessment by Fox management at the highest levels—for a crew in a war zone in such close proximity to an overwhelming advancing enemy force. Fox failed in its duty to her at every level.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

114.    This breach of duty and the standard of reasonable care foreseeably and actually caused, or substantially contributed to, the death of Sasha Kuvshynova.

115.    Sasha's parents, as her personal representatives, are entitled to damages for the reckless and negligent conduct of Fox resulting in her death, according to the enlightened conscience of a jury.

116.    Due to the recklessness, wantonness, and negligence of Fox, Sasha Kuvshynova was placed in apprehension of her imminent demise as artillery rounds began to strike near the car before it was finally hit.

117.    Sasha Kuvshynova experienced pre-impact terror and then unimaginable pain and suffering as she burned alive inside the car.

118.    The deceased, prior to her premature death, sustained bodily injury and suffered great pain and suffering, as well as apprehension of her imminent death, all to her damage in an amount exceeding the jurisdictional limits of all other courts which would otherwise have jurisdiction over this matter.

119.    Sasha's parents, as her personal representatives, are entitled to damages for her conscious pain and suffering, and pecuniary loss based on her wrongful death, according to the enlightened conscience of a jury.

120.    Fox's actions and omissions that caused Sasha's death, also caused her parents extreme emotional pain and suffering.

121.    Under the Civil Code of Ukraine, Sasha's parents are entitled to damages for the intense grief they experienced, according to the enlightened conscience of a jury.

**AND AS FOR THE SECOND CAUSE OF ACTION**

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

122. Fox engaged in material omissions of fact to deprive Sasha's parents of their rights to Fox's advantage. Fox calculated these misrepresentations by omission at a time when the parents were distraught, in disbelief, and unrepresented.

123. These material omissions include but are not limited to the omission of the security advisor's veto of the planned excursion to Irpin, the Mayor of Irpin's pronouncement banning journalists from the area, leaving the security and medical detail behind while going on a forbidden assignment to film Ukrainian defenses, after all producers had been pulled.

124. Fox later advanced these material omissions by affirmative misrepresentations of fact, as in Ben Hall's book misrepresenting the distance and location of Russian forces. Upon information and belief, these material omissions and misrepresentations were intended to keep the public in the dark, and also to prevent the Kuvshynovs from learning how they were deceived into signing away with their rights without any awareness of Fox's culpability.

125. Fox further deprived Sasha's parents of their rights through the pretense of non-existent consideration via purported existing obligations for Sasha's compensation and benefits.

126. Back pay and proceeds of an insurance policy are not a substitute for the damages, including punitive damages, for which Fox is liable for its wrongful conduct.

127. The Kuvshynovs are entitled to damages for this fraud, fraudulent misrepresentation, and negligent misrepresentation according to the enlightened conscience of a jury.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

## AND AS FOR THE THIRD CAUSE OF ACTION

128.    To induce Sasha's parents to sign waiver and non-disparagement agreements, for no consideration beyond amounts that were already purportedly obligated, Fox withheld all information in its possession about the circumstances of Sasha's death and Fox's accountability.

129.    The Kuvshynovs justifiably relied upon Fox's misrepresentations in unwittingly signing the agreement.

130.    Fox continues to actively conceal the circumstances of Sasha's death to this day.

131.    Upon information and belief, Fox's lack of transparency, its withholding of the communications equipment and other electronic gear, and the omissions and misrepresentations in the book authored by Ben Hall and published by Fox's sister corporation Harper-Collins, were all undertaken to conceal Fox's culpability in failing to adhere to reasonable safety standards and precautions in the most dangerous place in Ukraine, and to induce the Kuvshynovs to sign away their rights for no consideration that was not already owed.

132.    Upon information and belief, these misrepresentations have been intended to prevent the Kuvshynovs from learning of the fraudulent basis of the bargain Fox foisted on them.

133.    Wherefore, all agreements entered into by Sasha's parents should be declared null and void.

## AND AS FOR THE FOURTH CAUSE OF ACTION

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

134.    It shocks the conscious for Fox to take advantage of shocked and grieving parents, entreating them to sign an agreement to waive their rights without consideration beyond amounts for which Fox was purportedly already obligated—when Fox was, in fact, covering its tracks for its failure to follow Ukrainian law, or any law at all, in its engagement of Sasha's services.

135.    Fox actively concealed and misrepresented facts related to its own alleged misconduct that would have given the Kuvshynovs a right to sue for causes of action much more egregious than Fox's failure to compensate Sasha for her work and otherwise follow the employment, business registration, and tax laws of Ukraine.

136.    Wherefore, all agreements entered into by Sasha's parents should be declared null and void.

**AND AS FOR THE FIFTH CAUSE OF ACTION**

137.    Plaintiffs gave notice of recission and intent not to be bound by any agreements entered with Fox on February 24, 2024.

138.    Plaintiffs advised Fox of newly-discovered facts affecting the alleged agreement which Fox took, and continues to take, active measures to conceal.

139.    On March 1, 2024, Fox threatened retaliation against the Kuvshynovs for not adhering to the waiver and non-disparagement provision.

140.    Plaintiffs seek an order rescinding all agreements between themselves and Fox for lack of consideration, unconscionability, unclean hands, demonstrated malice and intimidation, and fraudulent inducement.

**AND AS FOR THE SIXTH CAUSE OF ACTION**

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

141.    Upon information and belief, the scapegoating and false derogatory comments made by Fox concerning Shane's supposed drinking problem (for which there is no evidence, and which he denies) at the time of the fatal incident, insinuating Shane was responsible--while at the same time Fox hides its own accountability through material misrepresentations and omissions, is the likely reason for Shane's dismissal from SEPAR.

142.    Upon information and belief, they form part of the reason Shane is unable to secure present employment in his field, and thus proximately caused his ensuing financial loss and reputational loss.

143.    These false statements injuring him in his business and reputation, constitute defamation per se, for which he is entitled to an award of punitive damages according to the enlightened conscience of a jury.

## **AND AS FOR THE SEVENTH CAUSE OF ACTION**

144.    Fox knew of Shane's contract of employment with SEPAR when it disparaged and defamed him, falsely turning blame on him for the Fox disaster in Irpin-Hostomel. Fox's scapegoating and false statements constitute tortious interference with Shane's contract with SEPAR, for which he is entitled to an award of damages and punitive damages according to the enlightened conscience of a jury.

145.    Shane's association with the Fox disaster in Ukraine, along with Fox's defamation, disparagement, and false allegations shifting blame to Shane have negatively affected Shane's employment prospects in his field.  All likely employers known to both Shane and Fox are affected by these circumstances and false insinuations.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

146.    Fox's scapegoating and false statements have interfered and continue to hinder Shane's prospects for employment in his field and constitute tortious interference with business relations, for which he is entitled to an award of punitive damages according to the enlightened conscience of a jury.

## AND AS FOR THE EIGHTH CAUSE OF ACTION

147.    Fox's reckless actions that resulted in the death of Shane's close companions, Fox's imposition on Shane of the dreadful non-contractual duty of transporting the dead body of his companion on a long journey across the Polish border, Fox's indifference to Shane's entreaties for information and assistance—caused emotional trauma that resulted in bodily injury.

148.    Accordingly, Shane is entitled to damages for intentional and negligent infliction of emotional distress to be determined by the enlightened conscience of a jury.

## AND AS FOR THE NINTH CAUSE OF ACTION

149.    These malicious actions undertaken with wanton indifference which resulted in bodily injury to Shane are grounds for punitive damages, to be determined by the enlightened conscience of a jury.

150.    The intentional and willful conduct above complained of against the defendants was aimed against the public as well as the decedent; was grossly unjust and involved high moral culpability for which punitive damages should be assessed in a sum of money to be determined by the trier of fact.

### Prayer for Relief

151.    Plaintiffs pray for an order holding Defendants jointly and severally liable

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

for the wrongful death, pain and suffering, moral damages, fraud, and respective intentional infliction of emotional distress, defamation, tortious interference, and punitive damages and awarding corresponding amounts, according to the enlightened conscience of a jury;

152.    Plaintiffs further pray for an order releasing them from unenforceable contract obligations imposed upon them by Defendants;

153.    Through its reckless and negligent conduct causing Sasha's death, and its material omissions and misrepresentations, Fox caused Sasha's parents enormous emotional pain and suffering, for which they are entitled to an award of punitive damages according to the enlightened conscience of a jury.

154.    Fox's egregious actions, exhibiting such malice and intent to harm, merit an award of punitive damages according to the enlightened conscience of a jury.

155.    The intentional and willful conduct above complained of against the defendants was aimed against the public as well as the decedent; was grossly unjust and involved high moral culpability for which punitive damages should be assessed in a sum of money to be determined by the trier of fact.

156.    Any other relief the court deems just and equitable.

**WHEREFORE**, plaintiffs demand judgment against the defendants, jointly and severally, to recover for all of their damages, all together with the costs and disbursements of this action.

Dated: New York, New York

March 14, 2024

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

BELLUCK & FOX, LLP

Attorneys for Plaintiff
546 5th Avenue, 5th Floor
New York, New York 10036
Tel: (212) 681-1575


STEPHEN F. HUMPHREYS PC
Stephen Humphreys
4200 Northside Parkway NW, #1-100
Atlanta, GA 30327
Tel: (706) 207 6982
(Pro Hac Vice admission anticipated)

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

## ATTORNEY VERIFICATION

STATE OF NEW YORK    )
                           )
COUNTY OF NEW YORK )

**SETH DYMOND,** an attorney duly admitted to practice before the Courts of the

State of New York, affirms the following to be true under the penalties of perjury:

I am the attorney for the Plaintiff in the above entitled-action. I have read the

foregoing **VERIFIED COMPLAINT** and know the contents thereof, and upon

information and belief, affirmant believes after an inquiry reasonable under the

circumstances the matters alleged herein to be true, and that the contentions herein are

not frivolous, as that term is defined in part 130.

The reason this verification is made by affirmant and not by Plaintiff is that the

Plaintiff herein resides in a County other than the County in which I maintain my offices.

The source of affirmant's information and the grounds of his belief are

communications, papers, reports and investigations contained in the file maintained by

this office.

Dated: New York, New York
        March 14, 2024

                        BELLUCK & FOX, LLP

                        Seth Dymond
                        Attorneys for Plaintiff
                        546 5th Avenue, 5th Floor
                        New York, New York 10036
                        Tel: (212) 681-1575

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.