UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANDRIY KUVSHYNOV, *individually and as surviving parent and personal representative of Oleksandra Kuvshynova, deceased*, IRYNA MAMAYSUR*, individually and as surviving parent of Oleksandra Kuvshynova, deceased*, and SHANE THOMSON,

                     Plaintiffs,

-v-

FOX NEWS NETWORK, LLC, FOX CORPORATION, NEWS CORPORATION *a/k/a* NEWS CORP., RUPERT MURDOCH, SUZANNE SCOTT, BENJAMIN HALL, and HARPERCOLLINS PUBLISHERS L.L.C.,

                     Defendants.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/21/2024

No. 24-cv-1950 (MKV)

OPINION AND ORDER
GRANTING
MOTION TO REMAND

---

MARY KAY VYSKOCIL, District Judge:

      Plaintiffs Andriy Kuvshynov, Iryna Mamaysur, and Shane Thomson filed this action in the Supreme Court of New York, County of New York, against Defendants Fox News Network, LLC, Fox Corporation, News Corporation, Rupert Murdoch, Suzanne Scott, Benjamin Hall, and HarperCollins Publishers LLC [ECF No. 1-1 ("Cmpl.")]. Fox News Network and Fox Corporation (jointly, the "Fox Defendants") removed the action citing the Court's diversity jurisdiction [ECF No. 1 ("Notice of Removal")]. Before the Court is Plaintiffs' motion to remand this action back to state court [ECF No. 14]. Because the parties are not completely diverse, and for all the reasons set forth below, the motion to remand is GRANTED.

### I.    BACKGROUND

**A. Background Facts**

      This case arises out of events "at the beginning of the Russian invasion of Ukraine." Cmpl.

1

¶ 2. Oleksandra "Sasha" Kuvshynova was a young Ukrainian woman who worked as "guide and translator" for a "Fox crew" that was reporting on the war. Cmpl. ¶¶ 2, 29, 32, 33. She was killed when a subset of the Fox crew went with Ukrainian soldiers to get footage of a "destroyed village" and the group was hit with "explosive rounds." Cmpl. ¶¶ 64, 71, 73, 74.

### B. Plaintiffs' Complaint and the Parties' Citizenships[1]

Plaintiffs Andriy Kuvshynov and Iryna Mamaysur are the parents of the deceased young woman. Cmpl. ¶¶ 2, 3. They are domiciled in Ukraine. Notice of Removal ¶ 8. Plaintiff Shane Thomson was a security consultant to the Fox crew. *See* Cmpl. ¶¶ 31, 55, 56, 65. He is domiciled in the United Kingdom. Notice of Removal ¶ 9.

Plaintiffs filed a Complaint in the Supreme Court of New York, County of New York, alleging "wrongful death, fraud, intentional infliction of emotional distress, defamation, and tortious interference" [ECF No. 1-1 ("Cmpl.") ¶ 1]. The gravamen of the Complaint is that "Fox News Network, by its recklessness and negligence, caused the death of Sasha Kuvshynova and then engaged in a campaign of material misrepresentations and omissions to hide its own accountability for the disaster and shift blame to Shane Thomson." Cmpl. ¶ 1.

Plaintiffs name as defendants in their lawsuit Fox News Network, LLC, Fox Corporation, News Corporation, Rupert Murdoch, Suzanne Scott, Benjamin Hall, and HarperCollins Publishers LLC. The Fox Defendants are citizens of Delaware and New York.[2] Notice of Removal ¶¶ 10,

---

[1] "An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). A corporation is a citizen both of the state in which it has its principal place of business and the state in which it is incorporated. *See* 28 U.S.C. § 1332(c)(1). An LLC "takes the citizenship of all of its members." *Platinum-Montaur Life Scis., LLC*, 943 F.3d at 615.

[2] The "sole member" of Fox News Network, LLC "is Fox Television Stations, LLC, whose sole member is Fox Television Holdings, LLC, whose sole member is Foxcorp Holdings, LLC," and "[a]ll of these companies were, and remain, formed in Delaware." Notice of Removal ¶ 10. "The sole member of Foxcorp Holdings, LLC is [Defendant] Fox Corporation," which is "a Delaware corporation with its principal place of business in New York." *Id.*; *see id.* ¶ 11 ("Defendant Fox Corporation is a Delaware corporation with its principal place of business in New York.").

11. Rupert Murdoch, who was the "Chairman and CEO directing the Fox entities at the time of the delicts alleged in this lawsuit," Cmpl. ¶ 7, is domiciled in New York, Notice of Removal ¶ 13. Suzanne Scott, the "Fox News Network CEO," Cmpl. ¶ 10, is domiciled in New Jersey, Notice of Removal ¶ 14. News Corporation, which Plaintiffs allege is "owned by the Murdoch family," Cmpl. ¶ 13, is a Delaware corporation with its principal place of business in New York, Notice of Removal ¶¶ 12, 16. HarperCollins Publishers LLC, an alleged "subsidiary of News Corporation," Cmpl. ¶ 14, is a citizen of both Delaware and New York, Notice of Removal ¶ 16.

Defendant Benjamin Hall, like Plaintiff Shane Thomson, is domiciled in the United Kingdom. Notice of Removal ¶ 15; *see id.* ¶ 9. According to the Complaint, Hall was "the lead Fox reporter on the news crew that included Sasha Kuvshynova" and was "grievously injured" in the same attack that killed Sasha. Cmpl. ¶¶ 21, 22. In that regard, the Complaint states, Hall "may . . . be more properly aligned in this litigation as a party-plaintiff victim of Fox Defendants' wrongful conduct." Cmpl. ¶ 23. However, Plaintiffs allege that Hall "wrote or adopted a false account of the death of Sasha Kuvshynova" in his book, *Saved*, which was "published by Defendant Harper Collins and heavily promoted by Defendant Fox for the purpose of deceiving Sasha's parents and the public about Fox's wrongful conduct and accountability for Sasha's death." *Id.*; *see id.* ¶ 14 (alleging that "*Saved* . . . gives a false account of the circumstances of the death of Sasha Kuvshynova as part of the scheme to deceive [] Sasha's parents and the public concerning Fox's alleged wrongdoing"); *id.* ¶ 124.

C. **Removal and Proceedings in this Court**

The Fox Defendants removed this action within a day of Plaintiffs' filing of the Summons and Complaint in state court, before an index number had been assigned and before any of the

defendants had been served [ECF No. 1 ("Notice of Removal") ¶¶ 1 & n.1, 4].[3]

The Notice of Removal cites diversity jurisdiction, 28 U.S.C. § 1332, as the sole basis for removal. *See* Notice of Removal at 1–3. It asserts that complete diversity exists because the case is between "foreign" citizens or subjects, on one side, and "citizens of one or more States," on the other. *Id.* ¶ 5. The Notice of Removal admits that "Defendant Benjamin Hall was a resident in, and was domiciled in, the United Kingdom at the time the Complaint was filed and remains so," but asserts, in conclusory fashion, that he "is improperly joined as a defendant." *Id.* ¶ 15.

After the Fox Defendants removed to this Court, all other parties appeared [ECF Nos. 7–11, 17]. Defendants HarperCollins Publishers and News Corporation filed a notice of consent to removal [ECF No. 12]. No other defendant has filed such a notice.

Plaintiffs filed a motion to remand this action back to state court [ECF Nos. 14, 14-1 ("Pl. Mem.")]. All defendants jointly filed an opposition [ECF Nos. 20 ("Opp."), 21 ("Hall Decl.")]. Plaintiffs filed a reply [ECF No. 24 ("Reply")].

Thereafter, Defendants filed a request for leave to file a sur-reply in further opposition to remand [ECF No. 26]. Defendant Hall also requested leave to file a motion to dismiss the case against him for lack of personal jurisdiction [ECF No. 22]. The Court, however, has not granted either of those requests.

---

[3] Ordinarily, under the "forum defendant rule," a home-state defendant cannot remove a diversity action to federal court; however, interpreting the text of Section 1441(b)(2), the Second Circuit concluded that this rule does not apply if the home-state defendant has not yet been served. *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019). Thus, the forum defendant rule "is no barrier to the removal" of this action, even though many of the defendants are citizens of New York, because none of the defendants had been served when the Notice of Removal was filed. *Id.* The parties argue at length, however, about whether removal was "premature" because "Plaintiffs' complaint had not yet been processed and accepted by the New York State County Clerk" and, therefore, Plaintiffs had no opportunity to attempt to serve Defendants before the Notice of Removal was filed. Pl. Mem. at 1; *see id.* at 4–5; Opp. at 2, 11–15. The so-called "snap removal" was proper under Second Circuit and New York State law. Under New York law, an action is "commenced" by the "filing" of the complaint by the plaintiff, not the assignment of an index number by the clerk, N.Y. C.P.L.R. § 203(c), and there is no rule requiring defendants to wait for plaintiffs to have an opportunity to effectuate service before removal. *See Troman v. Am. Fed'n of State*, No. 16-cv-6948 (JPO), 2016 WL 5940924, at *4–5 (S.D.N.Y. Oct. 13, 2016). As explained below, there are other reasons to remand this case.

## II. LEGAL STANDARDS

The party that removes an action to federal court "bears the burden of showing that federal jurisdiction is proper." *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 327 (2d Cir. 2011). A civil action that was filed in state court can be removed only if the federal district court would have had original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). When the removing party invokes diversity jurisdiction under 28 U.S.C. § 1332, it must show that complete diversity exists between the parties. *See Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 617 (2d Cir. 2019); *Advani Enterprises, Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998).

As relevant here, diversity jurisdiction exists when the action is between "citizens of a State and citizens or subjects of a foreign state," 28 U.S.C. § 1332(a)(2), or between "citizens of different States and in which citizens or subjects of a foreign state are additional parties," *id*. § 1332(a)(3). "However, diversity is lacking within the meaning of these sections where . . . on one side there are citizens and aliens and on the opposite side there are only aliens." *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 580–81 (2d Cir. 2002).

## III. DISCUSSION

There are several reasons why removal of this case to this Court is not proper. In particular, "the complaint raises only issues of state law and . . . the parties are not completely diverse under 28 U.S.C. § 1332(a)(2)." *F5 Cap. v. Pappas*, 856 F.3d 61, 75 (2d Cir. 2017). As such, the Court lacks subject matter jurisdiction. Defendants contend that the Court should "disregard[]" the admittedly "non-diverse defendant" because, Defendants assert, he "was improperly joined" as a defendant. Opp. at 1. However, the removing defendants fail to carry the "heavy burden" to establish fraudulent joinder. *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d

5

Cir. 2004). Furthermore, statutory removal procedures are strictly enforced, and it is not entirely clear that all defendants properly consented to removal. *See Taylor v. Medtronic, Inc.*, 15 F.4th 148, 151 (2d Cir. 2021).

A. **There Is No Diversity Jurisdiction.**

  1. **The Parties Are Not Completely Diverse under Section 1332(a).**

In this case, "diversity is lacking" because Plaintiffs are "only aliens" and Defendants are both "citizens and [an] alien[.]" *Universal Licensing Corp.*, 293 F.3d at 580–81. Plaintiffs are citizens of Ukraine and the United Kingdom. *See* Notice of Removal ¶¶ 8, 9. While most of the defendants are citizens of various States, there is no dispute that, for diversity purposes, Defendant Benjamin Hall is a citizen of the United Kingdom. *See Palazzo ex rel. Delmage*, 232 F.3d at 42 ("An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile"); Notice of Removal ¶ 15 (Hall is domiciled in the United Kingdom); *see also* Hall Decl. ¶ 1; Opp. at 1 (conceding that Hall is "non-diverse"); Pl. Mem. at 1.

The Notice of Removal clearly invokes Section 1332(a)(2) as the sole basis for removal and federal jurisdiction. *See* Notice of Removal ¶ 5 (asserting that the case is between "foreign" citizens or subjects, on one side, and "citizens of one or more States," on the other). The Second Circuit has repeatedly held that, for purposes of Section 1332(a)(2), "the presence of aliens on two sides of a case destroys diversity jurisdiction." *Suedrohrbau Saudi Co. v. Bazzi*, 2023 WL 1807717, at *2 (2d Cir. Feb. 8, 2023) (quoting *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir. 1980)). Thus, Hall's presence as a defendant in this case "destroys diversity jurisdiction" and warrants remand. *Id.*; *see Platinum-Montaur Life Scis., LLC*, 943 F.3d at 618.

6

### 2. Defendants Fail To Establish Fraudulent Joinder.

In the Notice of Removal, the removing defendants baldly assert that Hall "is improperly joined as a defendant." Notice of Removal ¶ 15. The Notice of Removal contains no supporting evidence or argument. In their brief, Defendants invoke the doctrine of "improper joinder," which is commonly called "fraudulent joinder," to argue that Hall "should be disregarded in determining diversity." *See* Opp. at 1, 17 &n.4. However, Defendants fail to carry the "heavy burden" required to avoid remand on that basis. *Briarpatch Ltd., L.P*, 373 F.3d at 302.

The Second Circuit has explained that, under the doctrine of fraudulent joinder, a plaintiff "may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001) (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460–61 (2d Cir. 1998)). To establish fraudulent joinder, and thereby avoid remand, a defendant must show, "by clear and convincing evidence," either "outright fraud" by the plaintiff, or that "there is *no possibility*, *based on the pleadings*, that the plaintiff can state a cause of action against the non-diverse defendant in state court." *Whitaker*, 261 F.3d at 207 (emphasis added) (quoting *Pampillonia*, 138 F.3d at 461)). Moreover, the district court must resolve "all factual and legal ambiguities" in favor of the plaintiff seeking remand. *Briarpatch Ltd., L.P*, 373 F.3d at 302.

As an initial matter, the purely conclusory assertion in the Notice of Removal that Hall "is improperly joined as a defendant" was clearly insufficient to establish removal jurisdiction. Notice of Removal ¶ 15. The removing defendants have "the burden of *showing* that federal jurisdiction is proper." *Montefiore Med. Ctr.*, 642 F.3d at 327 (emphasis added). "Conclusory references" in a notice of removal are not adequate. *Town of Newburgh, New York v. Newburgh EOM LLC*, 712

7

F. Supp. 3d 473, 479 (S.D.N.Y. 2024); *see MRS Prop. Invs., Inc. v. Bivona*, 2021 WL 1738329, at *3 (E.D.N.Y. May 3, 2021). Nevertheless, the removing defendants failed to offer any evidence or argument in support of their theory of fraudulent joinder until Defendants filed their opposition to Plaintiffs' motion to remand.

Defendants' fraudulent joinder argument rests largely upon the remark in the Complaint that Hall, who was injured in the attack that killed Sasha Kuvshynov, might be more "aligned" with Plaintiffs than Defendants. Opp. at 1, 3 (quoting Cmpl. ¶ 23), 5, 7, 10, 16, 18–19. However, Defendants' repeated citations to that gratuitous remark do not amount to "clear and convincing evidence" either of "outright fraud," or that "there is no possibility" that Plaintiffs can state a claim against Hall. *Whitaker*, 261 F.3d at 207. Plaintiffs are free to bring claims against Hall, even if they believe he is aligned with them in some respects.

It is not plausible to contend that Hall has "no real connection" to this case. *Whitaker*, 261 F.3d at 207. According to the Complaint, Hall was "the lead Fox reporter on the news crew that included Sasha Kuvshynova." Cmpl. ¶ 21; *see* Hall Decl. ¶ 2. He also "led" the subset of that team on the reporting trip that ended in her death. Cmpl. ¶ 68; *see* Hall Decl. ¶ 4. Plaintiffs further allege that Hall authored "a false account of the circumstances" of that reporting trip and Sasha Kuvshynova's death "as part of [a] scheme to deceive [] Sasha's parents and the public concerning Fox's alleged wrongdoing." Cmpl. ¶ 14; *see id.* ¶¶ 23, 84, 85, 107, 124 (alleging that "Ben Hall's book misrepresenting the distance and location of Russian forces" was "intended to keep the public in the dark, and also to prevent the Kuvshynovs from learning how they were deceived into signing away with their rights without any awareness of Fox's culpability"), 131.

Tacitly conceding that there is no evidence of "outright fraud" by Plaintiffs, *Whitaker*, 261 F.3d at 207, Defendants argue only that Plaintiffs do not have a viable claim against Hall, *see* Opp.

at 18–24. Defendants contend that Plaintiffs fail even to allege that Hall's book contains any false statements. Defendants seize on Plaintiffs' allegation that Hall misrepresented the location of Russian troops in relation to the Fox News crew's reporting trip, *see* Cmpl. ¶ 124, and stress that the book "merely states what *Mr. Hall and his colleagues* understood *at the time*," Opp. at 21 (emphasis in original). Defendants further contend that Hall's book could not have been used to defraud Sasha Kuvshynova's parents because they had already signed a release with Fox "*nearly a year*" before the book was published. Opp. at 21 (emphasis in original).

These arguments are insufficient to establish fraudulent joinder, which requires showing that "there is *no possibility*, *based on the pleadings*, that the plaintiff can state a cause of action against the non-diverse defendant in state court." *Whitaker*, 261 F.3d at 207 (emphasis added). Resolving "all factual and legal ambiguities" in favor of Plaintiffs, *Briarpatch Ltd., L.P*, 373 F.3d at 302, Plaintiffs' Complaint can be construed to allege that Hall misrepresented the Fox crew's understanding of the circumstances of the reporting trip and Sasha Kuvshynova's death. *See* Cmpl. ¶¶ 14, 84. Moreover, Plaintiffs do not contend that Hall's book was used to induce them to sign a release of claims against Fox but, instead, as part of a scheme to "keep" them and others "in the dark" about "Fox's alleged wrongdoing." *Id.* ¶¶ 14, 124.

Plaintiffs' case against Hall might or might not survive a motion to dismiss in federal court. In this posture, however, the Court must apply the "more lenient" New York pleading standard. *Williams v. Citigroup Inc.*, 659 F.3d 208, 215 n.4 (2d Cir. 2011); *see Shanahan v. Kolmar Lab'ys, Inc.*, No. 18-cv-8317 (JMF), 2019 WL 935164, at *1 (S.D.N.Y. Feb. 26, 2019). Based on Plaintiffs' pleading, resolving all factual and legal ambiguities in Plaintiffs' favor, there is "at least *some* possibility that Plaintiffs could recover against [Hall] in New York's courts." *Shanahan*, 2019 WL 935164, at *1 (emphasis in original). As such, Defendants have not carried the "heavy

9

burden" to establish fraudulent joinder and to avoid remand on that basis. *Briarpatch Ltd., L.P*, 373 F.3d at 302.

### B. It Is Not Clear that All Defendants Properly Consented to Removal.

The Court notes that remand may be appropriate for the additional reason that not every defendant has filed a notice of consent to removal. "It is well-established that defendants 'must independently express their consent to removal.'" *Taylor*, 15 F.4th at 151 (quoting *Pietrangelo v. Alvas Corp.*, 686 F.3d 62, 66 (2d Cir. 2012)). Moreover, a defendant ordinarily must "provide notice of consent to removal within the thirty-day statutory period" and "cannot cure" a failure to do so "by providing late consent." *Id.* In the Second Circuit, these requirements are strictly enforced and "any doubts" are resolved "against removability." *Id.* at 150 (quoting *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007)).

To be sure, removal may proceed without the written consents of defendants that have not been "properly joined and served." *Id.* at 152 (quoting 28 U.S.C. § 1446(b)(1)-(2)(A)). However, here, properly joined defendants who accepted service did not file notices of consent. Specifically, only HarperCollins Publishers and News Corporation have filed a notice of consent to removal [ECF No. 12]. Defendants Rupert Murdoch and Suzanne Scott filed a stipulation accepting service [ECF No. 17], but have not filed a notice of consent to removal.

Murdoch and Scott joined in Defendants' opposition to remand, which at least one court of appeals has concluded may cure a failure to file a notice of consent to removal. *See id.* at 151; *Esposito v. Home Depot U.S.A.*, 590 F.3d 72, 76–77 (1st Cir. 2009). The Second Circuit, however, expressly left open whether "opposition to remand can satisfy the writing requirement if made within the statutory time period for removal." *Taylor*, 15 F.4th at 151. Because, in this Circuit, removal procedures are strictly enforced and all doubts must be resolved against removability, the

Court notes this additional possible reason for remand.  *See id.*; *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d at 124.

## IV. CONCLUSION

Plaintiffs' motion to remand [ECF No. 14] is GRANTED.  The Clerk of Court respectfully is requested to remand this case to the Supreme Court of New York, County of New York, to close all pending motions, and to close this case.

**SO ORDERED.**

**Date:  November 21, 2024**　　　　　　　　　　　**MARY KAY VYSKOCIL**
**　　　　New York, NY**　　　　　　　　　　　　　**United States District Judge**